UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
BSH HAUSGERÄTE, GMBH,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/13/17

                         Petitioner,                17 Civ. 5776

        -against-                                   OPINION

JAK KAMHI,

                         Respondent.
----------------------------------------X

A P P E A R A N C E S:

        Attorneys for Petitioner

        PILLSBURY WINTHROP SHAW PITTMAN LLP
        1540 Broadway
        New York, NY 10036
        By:   Kenneth W. Taber, Esq.
              Nicholas M. Buell, Esq.


        Attorneys for Respondent

        DAVIDOFF HUTCHER & CITRON LLP
        605 Third Avenue, 34th Floor
        New York, NY 10158
        By:   Larry Hutcher, Esq.
              Eric J. Przybylko, Esq.

**Sweet, D.J.**

Petitioner BSH Hausgeräte GMBH ("BSH" or the "Petitioner") has moved pursuant to Federal Rule of Civil Procedure 64 and New York Civil Practice Law and Rules ("CPLR") 6201, 6211, and 6212 to confirm the order of attachment dated July 31, 2017, as corrected on August 3, 2017 (the "Order of Attachment" or the "Attachment") issued against the real property of Jak Kamhi ("Kamhi" or the "Respondent") located at 15 West 53rd Street, Apt. 32B, New York, New York 10019 (the "Property"). Based upon the facts and conclusions set forth below, Petitioner's motion is granted.

## Prior Proceedings

On October 2, 2003, BSH and Kamhi entered into a Share Sale and Purchase Agreement, under which BSH purchased shares in BSH Profilo Elektrikli Gerecler Sanayii A.S. (the "SPA-BSH"). (See Declaration of Nicholas M. Buell dated July 28, 2017 ("Buell July 28 Decl."), Ex. A.) The SPA-BSH contained an agreement to arbitrate disputes through the International Chamber of Commerce's International Court of Arbitration and under the ICC's Arbitration Rules (the "ICC"). (Id., Ex. A, ¶ 10.)

1

On October 7, 2003, Kamhi also signed a separate Share and Sale Purchase Agreement with another party (the "SPA-DB"), and to which BSH was not a party. (See id., Ex. B.) Like the SPA-BSH, the SPA-DB also contained an agreement to arbitrate disputes before the ICC and under the ICC's Arbitration Rules. (See id., Ex. B ¶ 5.)

On October 7, 2013, Kamhi, one of five claimants (the "Claimants"), submitted a Request for Arbitration to the ICC. (See id., Exs. C & E.) In the arbitration, Claimants sought monetary and non-monetary relief based on the theory that the termination of a distributorship agreement in 2008 (the "DA"), to which BSH was not a party, (see id., Ex. C), triggered an automatic rescission that terminated the SPA-BSH agreement; accordingly, Claimants requested either that BSH return its SPA-BSH shares or pay damages for allegedly causing the breach, (see id., Exs. C & E ¶¶ 143-47). On January 15, 2014, BSH filed its Answer to the Request for Arbitration, consenting to the jurisdiction of the ICC. (See id., Exs. D ¶¶ 11-12 & E ¶ 10.) During the arbitration proceedings, BSH and the other arbitration respondents moved to have the arbitration bifurcated as to whether (i) the DA's termination automatically terminated the SPA-BSH and (ii) BSH caused the breach of the DA; after submissions, and initial denial, and a renewed motion, the

2

tribunal of three arbitrators (the "Arbitral Tribunal") granted
the request for bifurcation on August 11, 2015. (Declaration of
Eric J. Przybylko dated September 14, 2017 ("Przybylko Decl."),
Exs. 2-3, 7.) The Arbitral Tribunal noted that after resolving
the question of automatic termination, subsequent issues, "if
any, will be determined by the [Arbitral] Tribunal in
consultation with the Parties." (Id., Ex. 7 ¶ 47.)

On February 6, 2017, following submissions and two days of
hearings and testimony, the Arbitral Tribunal issued their
judgment, awarding BSH a money judgment against the Claimants in
the amount of: (1) $544,230; (2) €1,900,487.13; and (3) interest
on those amounts under Article 4(a) of the Turkish Law No. 3095,
at the applicable rate, compounded annually, from February 7,
2017 until full and final settlement of the award (the "Final
Award"). (See Buell July 28 Decl., Ex. E ¶¶ 67-142, 574-79 &
Sec. XVIII.) Prior to rendering its decision, the Arbitral
Tribunal accepted briefing on whether a second phase would be
unnecessary if the claim regarding automatic termination was
rejected, and in its Final Award found that "no issue remains to
be determined in any second phase of the proceedings." (Id., Ex.
E ¶¶ 488, 492; see id. ¶¶ 457-59, 510, 515.)

BSH filed its petition to confirm the Final Award on July 28, 2017. (See Dkt. No. 1.) On July 31, 2017, this Court granted BSH's *Ex Parte* Application for an Order of Attachment against the Property, which was corrected on August 3, 2017. (Dkt. No. 3.) Title to the Property is solely in Kamhi's name, is unencumbered, and is a rented residence. (See Buell July 28 Decl., Exs. F, G, J.[1])

On August 2, 2017, the Sheriff for the City of New York, pursuant to CPLR § 6216, levied upon the Property a Notice of Attachment indorsed with the name and address of Petitioner's attorneys and a certified copy of the Order of Attachment by filing with the New York County Clerk. (Declaration of Nicholas M. Buell dated August 4, 2017 ("Buell Aug. 4 Decl."), Exs. C, D, E, F.

BSH moved to confirm the Order of Attachment on August 4, 2017, (Dkt. No. 23), which was heard and marked fully submitted on September 27, 2017.

---

[1]     "The Court generally has the discretion to take judicial notice of internet material." Boarding School Review, LLC v. Delta Career Educ. Corp., No. 11 Civ. 8921 (DAB), 2013 WL 6670584, at *1 n.1 (S.D.N.Y. Mar. 29, 2013); see also Patsy's Italian Rest., Inc. v. Banas, 575 F. Supp. 2d 427, 443 n.18 (E.D.N.Y. 2008) ("It is generally proper to take judicial notice of articles and Web sites published on the Internet."), aff'd, 658 F.3d 254 (2d Cir. 2011).

## Applicable Standard

Federal Rule of Civil Procedure 64 authorizes a federal court to seize "a person or property to secure satisfaction of the potential judgment" in accordance with "the law of the state where the court is located." Fed. R. Civ. P. 64. Under New York law, Section 6201 of the N.Y. CPLR lays out the grounds for attachment:

> [a]n order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled . . . to a money judgment against one or more defendants, when:
>
> (1) the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state; or
>
> (2) the defendant resides or is domiciled in the state and cannot be personally served despite diligent efforts to do so; or
>
> (3) the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts; or
>
> (4) the action is brought by the victim or the representative of the victim of a crime, as defined in subdivision six of section six hundred twenty-one of the executive law, against the person or the legal representative or assignee of the person convicted of committing such crime and seeks to recover damages sustained as a result of such crime pursuant to section six hundred thirty-two-a of the executive law; or

(5) the cause of action is based on a judgment, decree
or order of a court of the United States or of any
other court which is entitled to full faith and credit
in this state, or on a judgment which qualifies for
recognition under the provisions of article 53.

Capital Ventures Int'l v. Republic of Arg., 443 F.3d 214, 219
(2d Cir. 2006) (quoting N.Y. CPLR § 6201). "Any debt or property
against which a money judgment may be enforced . . . is subject
to attachment." N.Y. CPLR § 6202.

To confirm an order of attachment, a plaintiff must show
"that there is a cause of action, that it is probable that the
plaintiff will succeed on the merits, that one or more grounds
for attachment provided in [N.Y. CPLR] Section 6201 exist, and
that the amount demanded from the defendant exceeds all
counterclaims known to the plaintiff." N.Y. CPLR § 6212(a); see
Capital Ventures Int'l, 443 F.3d at 219. In addition to
determining a statutory ground for attachment, a court must
evaluate whether attachment "is needed to secure payment or
obtain jurisdiction, and it retains discretion only to the
extent that these determinations require weighing of evidence
and also in balancing competing considerations." Mishcon de Reya
N.Y. LLP v. Grail Semiconductor, Inc., No. 11 Civ. 4971 (RJH),
2011 WL 6957595, at *3 (S.D.N.Y. Dec. 28, 2011) (internal
quotation marks omitted) (quoting Capital Ventures Int'l, 443

F.3d at 221); see also <u>Disney Enter., Inc. v. Finanz St. Honore,</u>
<u>B.V.</u>, No. 13 Civ. 6338 (NG) (SMG), 2017 WL 1862211, at *2
(E.D.N.Y. May 8, 2017) ("[T]he party seeking an attachment must
show the existence of one of the two purposes of an attachment,
either the need to secure a judgment or to obtain
jurisdiction.").[2] When evaluating a motion to confirm an
attachment, a district court "must give the plaintiff the
benefit of all the legitimate inferences that can be drawn from
the facts pleaded." <u>Gentile v. Conley</u>, 636 F. Supp. 2d 246, 251
(S.D.N.Y. 2009).


**The Motion to Confirm the Attachment is Granted**


In opposition to the instant motion, Respondent makes three
arguments. First, Respondent contends that Petitioner has not,
for several reasons, shown a likelihood of success on the merits
as to the confirmation of the underlying arbitration award;
second, that Petitioner has not demonstrated entitlement to an

---

[2]    In addition, a plaintiff seeking an order of attachment is
required to provide an "undertaking" as security for (1) costs
and damages incurred by the defendant in the event that the
court subsequently determines that the plaintiff was not
entitled to an attachment or if defendant ultimately recovers
judgment; and (2) certain fees incurred by the sheriff. <u>See</u> N.Y.
CPLR §§ 6212(b) & 8011. The amount of the undertaking must be at
least $500 but otherwise is within the discretion of the court.
<u>See</u> N.Y. CPLR § 6212(b). Petitioner has already posted an
undertaking in the amount of $15,000. (<u>See</u> Dkt. No. 7.)

attachment in the amount of $3 million; and third, that the present circumstances warrant judicial discretion in denying the attachment. For the reasons below, Defendants arguments are unavailing, Petitioner has met its burden, and the instant motion is granted.

### a. Cause of Action and Likelihood of Success

First, to confirm an order of attachment, a petitioner must show that there is a cause of action. See Mishcon de Reya, 2011 WL 6957595, at *4 (quoting N.Y. CPLR § 6212(a)). Petitioner seeks confirmation of the Final Award against Respondent, one of the Claimants in the underlying arbitration. That there is a cause of action is not disputed, and therefore this element is met.

In greater dispute, however, is whether Petitioner has demonstrated a likelihood of success on the merits of its confirmation claim. Foreign arbitral awards are recognized and enforced under the Federal Arbitration Act (the "FAA"), which codified the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), implemented by 9 U.S.C. § 201 et seq. See Arbitration between Oltchim, S.A. v. Velco Chemicals, Inc., 348 F. Supp. 2d 97, 99-100 (S.D.N.Y.

2004). Under the Convention, contracting states like the United States "shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon." Convention art. III. "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks and citations omitted); see also Oltchim, 348 F. Supp. 2d at 100 ("The [FAA] instructs that courts 'shall' confirm the award unless it finds a ground for refusal or deferral of recognition or enforcement specified in the Convention."). "Only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." Id. (quoting Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emp. Int'l Union, 954 F.2d 794, 797 (2d Cir. 1992)).

Accordingly, the Second Circuit has held that a district court's ability to reject an arbitration award is "strictly limited: 'The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.'" Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 19 (2d Cir. 1997) (quoting 9 U.S.C. § 207). Under Article V of

the Convention, a court may refuse to recognize or enforce an arbitral award if:

(a) The parties to the agreement ... were ... under some incapacity, or the said agreement is not valid under the law ...; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings ...; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration ...; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties ...; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

Convention art. V(1). Enforcement may also be refused if "[t]he subject matter of the difference is not capable of settlement by arbitration," or if "recognition or enforcement of the award would be contrary to the public policy" of the country in which enforcement or recognition is sought. Convention art. V(2).

Respondent argues that Articles (V)(1)(b) and (V)(1)(d) render the Final Award unenforceable. Specifically, Respondent presents that he was denied the opportunity to fully and fairly

10

present his case to the Arbitral Tribunal because of the arbitration's bifurcation which resolved claims Respondent contends were unheard and that enforcing the Final Award as joint and several liability between Claimants violates laws governing the arbitration. (See Resp't's Mem. in Opp. ("Opp. Mem.") at 12.) Neither argument countervails Petitioner's showing of probable likelihood of success on the merits.

Under Article V(1)(b), Respondent must demonstrate that "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." Convention art. V(1)(b). As the Second Circuit has found, this provision "essentially sanctions the application of the forum state's standards of due process." Unrvneshprom State Foreign Econ. Enter. v. Tradeway, Inc., No. 95 Civ. 10278 (RPP), 1996 WL 107285, at *6 (S.D.N.Y. Mar. 12, 1996) (quoting Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier (RAKTA), 508 F.2d 969, 975 (2d Cir. 1974)). In reviewing the arbitral process, the inquiry is "limited to determining whether the procedure used was fundamentally unfair." Abu Dhabi Inv. Auth. v. Citigroup, Inc., No. 12 Civ. 283 (GBD), 2013 WL 789642, at *7 (S.D.N.Y. Mar. 4,

2013) (citing Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20
(2d Cir. 1997)), aff'd, 557 F. App'x 66 (2d Cir. 2014).

Respondent contends that it was fundamentally unfair for
the Arbitral Tribunal to bifurcate Claimants' two claims and
then, without adequate notice, conclude in its Final Award there
was no need for a second arbitration phase to adjudicate
separately Claimants' second claim. (See Opp. Mem. at 14-15.)
Evidence proffered does not indicate a lack of adequate notice,
however. Over years of motions and briefing, Respondent argued
against bifurcation of Claimants' two claims and lost;
similarly, prior to the Final Award decisions, the arbitrating
parties were given the opportunity to argue whether a second
phase of arbitration was necessary based on the outcome of the
first phase, an argument that Respondent made and also lost.
Given the "great latitude" that arbitrators have "to determine
the procedures governing their proceedings" and the repeated
notice and opportunity to argue against the Arbitral Tribunal's
decisions—opportunities Respondent took advantage of—it is
probable that Petitioner will be able to show the arbitration
proceedings were fundamentally fair. Supreme Oil Co. v.
Abondolo, 568 F. Supp. 2d 401, 408 (S.D.N.Y. 2008); see also Abu
Dhabi Inv. Auth., 2013 WL 789642, at *9 (rejecting fundamental
unfairness argument when "tribunal allowed [respondent] more

12

than an adequate opportunity to present evidence to support its case").[3]

Under Article V(1)(d), Respondent must show that "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place." Convention art. V(1)(d). Respondent argues that because the Arbitral Tribunal's Final Award does not specifically state that the Claimants are joint and severally liable, to enforce such the Final Award in such a way on him would go against legal presumptions of the ICC, of Switzerland, the *situs* of the arbitration, and of Turkey, the underlying agreements' governing law. (See Opp. Mem. at 16-19.)

---

[3] Respondent's main authority in support, Iran Aircraft Indus. v. Avco Corp., 980 F.2d 141 (2d Cir. 1992), is inapposite. In Iran Aircraft, the Second Circuit affirmed the denial of an arbitration award when a defendant was informed by one tribunal judge that a certain form of evidence was acceptable and, later, a different tribunal judge ultimately rejected the claim for lack of proof without informing defendant of the new evidentiary preference. See id. at 146. Here, Respondent was given repeated notice of the Arbitral Tribunal's intentions and opportunity to brief his positions, which were considered. (See Buell July 28 Decl., Ex. E ¶¶ 457-59, 510, 515.)

13

Respondent's Article V(1)(d) argument also does not demonstrate that Petitioner is unlikely to succeed on the merits. First, as Petitioner correctly notes, under the terms of the parties' arbitration agreement, the ICC rules are selected to govern disputes, not the laws of Switzerland or Turkey.[4] (See Buell July 28 Decl., Exs. A ¶ 10 & B ¶ 5 ("All disputes . . . shall be finally settled under the Arbitration Rules of the [ICC] . . . in accordance with the said Rules.") The Final Award decision noted the ICC's rules on awards, which expressly states that "final award shall fix the costs of the arbitration and decide which of the parties shall bear them or in what proportion they shall be borne by the parties," (Buell July 28 Decl., Ex. E ¶ 525 (emphasis added)), and ultimately found that

---

[4]     Moreover, even if a country's laws were relevant, it mostly likely would be the law of Switzerland, as the *situs* of the arbitration, not Turkey. See ICC Commission Report: Decision on Costs in International Arbitration ¶ 51 (available at http://library.iccwbo.org/content/dr/commission_reports/cr_0049_decisions.htm) ("It is widely accepted that the law applicable to decisions on costs is the *lex arbitri*, although some commentators have argued that it is the law governing the contract."); see also (Declaration of Nicholas M. Buell dated September 22, 2017, Ex. A ¶ 112 (noting that the arbitration's Terms of Reference also reference the Swiss Private International Law Act)). Although justifiably disputed, Petitioner has put forward sufficient evidence that, under Swiss law, it is probable that joint and several liability as to the Final Award is implied. (See Pet.'s Reply in Further Supp. ("Pet.'s Reply") at 8 n.4.) Drawing reasonable inferences in favor of Petitioner, the application of joint and several liability here has not been established as not in accordance with the relevant laws governing the arbitration.

"Claimants should bear the entirety of the costs of these proceedings," (id. ¶ 529-30). The Arbitral Tribunal noted repeatedly in its Final Award that Claimants acted as one throughout the proceeding. (See id. ¶¶ 87, 91, 96-97, 101, 105, 107-08, 111-23, 128(i), 134(i), 136-40, 143-47, 543-44.)

As such, Respondent has not established that finding an award of joint and several liability as to the Final Award is necessarily inconsistent with the award procedures detailed in the ICC rules. See Gomez de Hernandez v. Wells Fargo Advisors, LLC, No. 16 Civ. 9922 (LGS), 2017 WL 3088396, at *4 (S.D.N.Y. July 20, 2017) (rejecting Article V(1)(d) argument when petitioner seeking to vacate award did not show that "arbitration procedure deviated from the terms of the parties' agreement" or how any alleged deviations "prejudiced her in the arbitration proceeding"). Moreover, the Final Award is not "so ambiguous that a court is unable to discern how to enforce it," so Petitioner has a likelihood of success without need to remand to the Arbitral Tribunal for clarity as to the Final Award's directions. Telenor Mobile Commc'ns AS v. Storm LLC, 351 F. App'x 467, 469 (2d Cir. 2009).

Lastly, in the face of these arguments, Petitioner has presented a comprehensive and reasoned Final Award decision by

the Arbitral Tribunal, the product of years of discovery, motions, briefing, and live witness testimony. (See generally Buell July 28 Decl., Ex. E.) Drawing all legitimate inferences in Petitioner's favor, Petitioner has demonstrated that it is more likely than not that it will succeed on its claim. See Agrera Investments Ltd. v. Palant, No. 13 Civ. 8721 (KPF), 2014 WL 4958075, at *3 (S.D.N.Y. Oct. 3, 2014) (finding a "colorable basis" existed to support confirmation of a foreign award when there was "document discovery, conducted a hearing during which witnesses testified, considered post-trial briefing from both sides, and ultimately issued a reasoned decision that weighed both parties' positions"). Accordingly, this element is satisfied.

### b. Ground of Relief under N.Y. CPLR

A petitioner seeking confirmation of an attachment order must also demonstrate that a ground for attachment under N.Y. CPLR § 6201 exists. See N.Y. CPLR 6212(a). Petitioner has justified the instant motion under Section 6201(a), that "the defendant is a nondomiciliary residing without the state." N.Y. CPLR § 6201(a). Petitioner has presented evidence that Respondent is a Turkish national domiciled outside the state of New York. (See Buell July 28 Decl., Exs. C & E.) Respondent has

16

not disputed this. See (Opp. Mem. at 22); Olshan Grundman Frome
Rosenzweig & Wolosky LLP v. Jeglitza, No. 00 Civ. 1140 (JGK),
2000 WL 420557, at *3 (S.D.N.Y. Apr. 18, 2000) ("Here, this
requirement is plainly met because the respondents, who reside
in Germany, are non-domiciliaries residing outside New York").
Accordingly, this element is satisfied.


### c. Amount of Counterclaims


Section 6212(a) requires that the amount demanded from a
respondent exceed all counterclaims known to a petitioner.
Respondent contends that Petitioner's request for an attachment
of the Property amounting to approximately $3 million is
unjustified based on the judgment against him which Respondent
argues either is unenforceable, mathematically inaccurate, or,
at most, only one-fifth of the total Final Award amount because
of the remaining Claimants.


These arguments fail at present. As to the interest rate
calculations, Petitioner has adduced evidence that it is
entitled under the Final Award and Turkish interest rates to
approximately $3 million and for which, as described above,
Respondent is arguably joint and severally liable, (see
Declaration of Nicholas M. Buell dated September 22, 2017

17

("Buell Sept. 22 Decl."), Exs. D-F); taken together, this is sufficient to demonstrate "a likelihood of recovering any specific amount of damages." Chevron Corp. v. Donziger, 840 F. Supp. 2d 773, 776 (S.D.N.Y. 2012).[5] As Respondent has neither argued nor put forward evidence of counterclaims to Petitioner, and Petitioner claims not to be aware of any counterclaims, (see Pet.'s Mem. in Supp. ("Pet.'s Mem.") at 8), the amount of the Final Award likely to be recovered by Petitioner from Respondent exceeds the amount of known counterclaims. See Citgo Petro. Corp. v. Panther Oil Corp., No. 97 Civ. 1121 (SJ), 1997 WL 168589, at *2 (E.D.N.Y. Apr. 3, 1997). Accordingly, this element is satisfied.

d. Necessity

Lastly, to warrant an attachment, a petitioner must demonstrate that "that attachment is necessary for security purposes—that is, whether 'there exists a real threat to [a petitioner's] ability to enforce a judgment against [a

---

[5]     The parties dispute the precise value of Petitioner's award, principally based on disagreements as how to calculate application of the prevailing interest rates under Turkish law. (See Opp. Mem. at 21-22 & n.4; Pet.'s Reply at 9 & n.5.) As no known counterclaims exist and Petitioner has demonstrated a likelihood of recovering a specific damage amount greater than the counterclaims, the precise value of the award need not be resolved now to confirm the attachment.

18

respondent] . . . , so as to justify the drastic remedy of pre-judgment attachment." Herzi v. Ateliers De La Haute-Garonne, No. 15 Civ. 7702 (RJS), 2015 WL 8479676, at *2 (S.D.N.Y. Oct. 13, 2015); see also Capital Ventures Int'l, 443 F.3d at 222. Respondent argues that attachment is unnecessary both for jurisdictional purposes, because Respondent has voluntarily appeared in this action, and for monetary security, as Respondent contends that Petitioner has not shown that Respondent is avoiding a legitimate debt.

Necessity has been established here. Respondent's waiver of service and notice of appearance do not themselves confer jurisdiction over Respondent. See Fed. R. Civ. P. 4(d)(5); Pacnav S.A. v. Effie Bus. Corp., No. 06 Civ. 13512 (JGK), 2010 WL 2102714, at *2 (S.D.N.Y. May 20, 2010) (noting that a party can object to personal jurisdiction "at any time before the answer is filed or in the answer"). More importantly, while no evidence has been adduced indicating that Respondent would be unable to satisfy any judgment from the Final Award, Petitioner has represented that, aside from the Property, Respondent's assets are outside New York, a fact that Respondent has not contested, (see Opp. Mem. at 23), and Respondent has recently placed the Property for sale, (see Declaration of Nicholas M. Buell dated October 13, 2017 ("Buell Oct. 13 Decl."), Ex. B). As

such, even if jurisdiction were already established,
confirmation would still be appropriate to ensure a
nondomiciliary does not "render itself judgment-proof in this
jurisdiction." Herzi, 2015 WL 8479676, at *3; see also ITC
Entm't, Ltd. v. Nelson Film Partners, 714 F.2d 217, 220 (2d Cir.
1983) (holding that Section 6201 "continues to countenance
attachments against nonresidents when appropriate to secure the
judgment, even when unnecessary to secure jurisdiction").
Accordingly, this element is satisfied.

**Conclusion**

Based on the conclusions set forth above, Petitioner's
motion to confirm the Attachment is granted.

It is so ordered.

**New York, NY**
**October** *18*, **2017**

ROBERT W. SWEET
U.S.D.J.