UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
BSH HAUSGERÄTE GMBH,

                Petitioner,

   -against-

JAK KAMHI,

           Respondent.
-----------------------------------X

A P P E A R A N C E S:

17 Civ. 5776

OPINION



### Attorneys for Petitioner

PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
By: Kenneth W. Taber, Esq.
     Nicholas M. Buell, Esq.


### Attorneys for Respondent

DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue, 34th Floor
New York, NY 10158
By: Eric J. Przybylko, Esq.

**Sweet, D.J.**

Petitioner BSH Hausgeräte GMBH ("BSH" or the "Petitioner") has petitioned, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 6, 1958, 21 U.S.T. 2517, codified at 9 U.S.C. § 201 et seq. (the "New York Convention" or "Convention"), for an order confirming a foreign arbitration award of a money judgment for BSH and against Respondent Jak Kamhi ("Kamhi" or the "Respondent") in the amount of: (1) $544,230; (2) €1,900,487.13; and (3) interest on those amounts under Article 4(a) of the Turkish Law No. 3095, at the applicable rate, compounded annually, from February 7, 2017, until full and final settlement of the award (the "Final Award"). See Am. Pet. 5, Dkt. No. 20.

Based upon the conclusions set forth below, the petition is granted, and the Final Award is confirmed.

**Prior Proceedings**

Background on the relationship of the parties, the parties' arbitration agreements, the foreign arbitration process before a panel of three arbitrators (the "Arbitral Tribunal"), and the Final Award were set forth in the Court's October 18, 2017,

1

also contained an agreement to arbitrate disputes before the ICC and under the ICC Rules. See id., Ex. B ¶ 5.

On October 7, 2013, Kamhi, one of five claimants (the "Claimants"), submitted a Request for Arbitration to the ICC. See id., Exs. C, E ¶ 1 (defining the five claimants as "Claimants"). In the arbitration, Claimants sought monetary and non-monetary relief based on the theory that the termination of a distributorship agreement in 2008 (the "DA"), to which BSH was not a party, triggered an automatic rescission that terminated the SPA-BSH; accordingly, Claimants requested either that BSH return its SPA-BSH shares or pay damages for allegedly causing the breach. See id., Exs. C, E ¶¶ 143-47. On January 15, 2014, BSH filed its Answer to the Request for Arbitration, consenting to the ICC's jurisdiction. See id., Exs. D ¶¶ 11-12, E ¶ 10. The parties and Arbitral Tribunal agreed to the arbitration's Terms of Reference on May 19, 2014. See Declaration of Nicholas M. Buell dated September 22, 2017 ("Buell Sept. 22 Decl.") Ex. A, Dkt. No. 44.

During the arbitration proceedings, BSH and the other respondents in the arbitration moved to have the arbitration bifurcated as to whether (i) the DA's termination automatically terminated the SPA-BSH (the "Automatic Termination Claim") and

3

(ii) BSH caused the breach of the DA (the "Breach Claim"); on August 11, 2015, after briefings, an initial denial, and a renewed motion for bifurcation, the Arbitral Tribunal granted the request. Declaration of Eric J. Przybylko dated September 14, 2017 ("Przybylko Decl."), Exs. 2-3, 7, Dkt. No. 39. The Arbitral Tribunal noted that, after resolving the question of automatic termination, subsequent issues, "if any, will be determined by the [Arbitral] Tribunal in consultation with the Parties." Id., Ex. 7 ¶ 47.

On September 5 and 6, 2016, the Arbitral Tribunal conducted hearings in Switzerland. Buell July 28 Decl., Ex. E ¶ 134.

On February 6, 2017, the Arbitral Tribunal issued its Final Award, awarding BSH a money judgment against the Claimants in the amount of: (1) $544,230; (2) €1,900,487.13; and (3) interest on those amounts under Article 4(a) of the Turkish Law No. 3095, at the applicable rate, compounded annually, from February 7, 2017 until full and final settlement of the award. See Buell July 28 Decl., Ex. E ¶¶ 67-142, 574-79 & sec. XVIII. Prior to rendering its decision, the Arbitral Tribunal accepted briefing on whether a second phase would be unnecessary if the claim regarding automatic termination was rejected and, after determining that the SPA-DB had not been terminated, found in

4

its Final Award that "no issue remains to be determined in any second phase of the proceedings" with regard to the Breach Claim. Id., Ex. E ¶¶ 488, 492; see id. ¶¶ 457-59, 475-88, 510, 515.

On July 28, 2017, BSH filed the instant petition to confirm, which was amended on August 3, 2017. Dkt. Nos. 1, 20.

On August 2, 2017, Petitioner moved to confirm an order of attachment issued against Respondent's real property located at 15 West 53rd Street, Apt. 32B, New York, New York 10019, which was granted in the October 18 Opinion. See id., 2017 WL 4712226, at *7.

Following the October 18 Opinion, the parties requested oral argument on the instant petition, which was heard and marked fully submitted on December 6, 2017.

**Applicable Standard**

"Arbitration awards are not self-enforcing, [and] they must be given force and effect by being converted to judicial orders by courts; these orders can confirm and/or vacate the award, either in whole or in part." Power Partners MasTec, LLC v.

Premier Power Renewable Energy, Inc., No. 14 Civ. 8420 (WHP), 2015 WL 774714, at *1 (S.D.N.Y. Feb. 20, 2015) (quoting D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006)). "When a party seeks confirmation of an arbitral award under the New York Convention, '[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.'" Albtelecom SH.A v. UNIFI Commc'ns, Inc., No. 16 Civ. 9001 (PAE), 2017 WL 2364365, at *4 (S.D.N.Y. May 30, 2017) (quoting 9 U.S.C. § 207); see Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 23 (2d Cir. 1997) ("[T]he Convention is equally clear that when an action for enforcement is brought in a foreign state, the state may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention.").

"Article V of the Convention specifies seven exclusive grounds upon which courts may refuse to recognize an award." Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 90 (2d Cir. 2005); see also CBF Industria de Gusa S/A v. AMCI Holdings, Inc., 850 F.3d 58, 76-77 (2d Cir.), cert. denied, 138 S. Ct. 557 (2017). These grounds are:

> (a) The parties to the agreement . . . were . . . under some incapacity, or the said agreement is not valid under the law . . . ; or

6

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings . . .; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . .; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties . . .; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

Convention art. V(1). Enforcement may also be refused if

"[t]he subject matter of the difference is not capable of

settlement by arbitration," or if "recognition or

enforcement of the award would be contrary to the public

policy" of the country in which enforcement or recognition

is sought. Convention art. V(2).


Normally, "[t]he confirmation of an arbitration award is a

summary proceeding that merely makes what is already a final

arbitration award a judgment of the court." Corporacion Mexicana

De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-

Exploracion Y Produccion, 832 F.3d 92, 111 (2d Cir. 2016)

(quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d

Cir. 1984)), cert. dismissed, 137 S. Ct. 1622 (2017). "The

arbitrator's rationale for an award need not be explained, and the award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case[.]'" D.H. Blair, 462 F.3d at 110 (quoting Barbier v. Shearson Lehman Hutton, Inc., 948 F.2d 117, 121 (2d Cir. 1991)). "Only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." Id. (quoting Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, 954 F.2d 794, 797 (2d Cir. 1992)).

        "The party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the Convention applies. The burden is a heavy one, as the showing required to avoid summary confirmance is high." Albtelecom, 2017 WL 2364365, at *4 (internal citations omitted); see also Korean Trade Ins. Corp. v. Eat It Corp., No. 14 Civ. 3456 (MKB), 2015 WL 1247053, at *4 (E.D.N.Y. Mar. 16, 2015) (internal alterations and quotation marks omitted)("Courts have held that judicial policy strongly favors recognition by American courts of foreign arbitral awards.")

Respondent claims that the Arbitral Tribunal's decision to bifurcate the arbitration proceedings into two phases, but then issue its Final Award without having a second phase, was a fundamentally unfair "bait and switch." Opp. Mem. 17. This argument finds no support in the history of the arbitration.

Under Article V(1)(b), Respondent must demonstrate that "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." Convention art. V(1)(b). As the Second Circuit has stated, this provision "essentially sanctions the application of the forum state's standards of due process." Mondis Tech. Ltd. v. Wistron Corp., No. 15 Civ. 2340 (RA), 2016 WL 6534255, at *5 (S.D.N.Y. Nov. 3, 2016) (quoting Iran Aircraft Indus. v. Avco Corp., 980 F.2d 141, 145 (2d Cir. 1992)). The inquiry is "limited to determining whether the procedure used was fundamentally unfair[,]" Abu Dhabi Inv. Auth. v. Citigroup, Inc., No. 12 Civ. 283 (GBD), 2013 WL 789642, at *7 (S.D.N.Y. Mar. 4, 2013) (citing Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997)), aff'd, 557 F. App'x 66 (2d Cir. 2014), and ensuring that there was "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Iran

Aircraft Indus., 980 F.2d at 145 (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976)).

Two elements of the underlying arbitration are clear, although neither amount to fundamental procedural unfairness. First, it is clear that Respondent did not at the time—and does not today—believe that resolution of the Automatic Termination Claim would resolve the Breach Claim. However, the Arbitral Tribunal provided opportunity to brief on the question of the interdependence between the two claims both prior to the decision to bifurcate and afterward. See Przybylko Decl. Ex. 4, ¶¶ 35, 39, Ex. 7 ¶¶ 26-32; Buell July 28 Decl. Ex. E ¶¶ 457-71. At that time, Respondent's briefings indicated that he recognized that there was only "a possible second phase" of the arbitration. Przybylko Decl. Ex. 9 ¶ 223 (emphasis in original); id. ¶ 203. Moreover, despite Respondent's current claim of confusion by the Arbitral Tribunal's decisions, the Arbitral Tribunal's decision at the time of bifurcation that "the issues to be determined in any Second Phase will be determined by the Tribunal in consultation with the Parties" can only reasonably be interpreted to mean that a second phase, and any issues to be determined therein, were not a certainty. Id. Ex. 7 ¶ 54(c).

Second, it is clear that the Arbitral Tribunal, having reviewed Respondent's submissions, determined that there was no breach of the SPA-DB, that the Breach Claim was related to the first phase's Automatic Termination Claim, and that, consequently, the Breach Claim was moot. See Buell July 28 Decl. Ex. E ¶¶ 489-515. That Respondent still does not agree with the Arbitral Tribunal's decision does not mean he was deprived a fair opportunity to present his case. See Am. Univ. of Antigua Coll. of Med. v. Leeward Const. Co., No. 14 Civ. 8410 (DLC), 2015 WL 1958971, at *4 (S.D.N.Y. May 1, 2015) (rejecting Article V(1)(b) argument because the "Tribunal concluded that [the plaintiff] 'formulated its counterclaim such that it includes a claim of unjust enrichment . . . and the Parties' subsequent oral and written submissions have addressed this unjust enrichment claim.'"), aff'd sub nom. Am. Univ. of Antigua-College of Med. v. Leeward Constr. Co., Ltd., 653 F. App'x 48 (2d Cir. 2016); Agrera Investments Ltd. v. Palant, No. 13 Civ. 8721 (KPF), 2014 WL 4958075, at *3 (S.D.N.Y. Oct. 3, 2014) (finding "a colorable basis exists to support the Final Award: the Tribunal reviewed submissions from both sides, allowed document discovery, conducted a hearing during which witnesses testified, considered post-trial briefing from both sides, and

ultimately issued a reasoned decision that weighed both parties'
positions).[1]

## b. Joint and Several Liability Does Not Make the Final Award Unenforceable Under Article V(1)(d)

Respondent next contends that Article V(1)(d), which
requires a court to evaluate the arbitral procedure and law,
makes the Final Award unenforceable. The Final Award held that:
"As the unsuccessful Party, Claimants should bear the entirety
of the costs of these proceedings . . . ." Buell July 28 Decl.
Ex. E ¶ 530. Respondent avers that, as the Final Award does not
state that Claimants are to be held joint and severally liable,
to find such by confirming the Final Award as proposed by
Petitioner would require making a presumption about the Final
Award's language contrary to the laws governing the arbitration.
See Opp. Mem. 12-15. This argument is unavailing.

---

[1]     Respondent compares his situation to that of the claimant
in Iran Aircraft Indus. v. Avco Corp., but such comparison is
unwarranted. There, an arbitrator's final award rejected a
party's claim because certain documents had not been introduced
at the arbitration, even though the arbitrator had previously
advised that party not to provide those very documents. See id.,
980 F.2d at 143-44. Here, the Arbitral Tribunal provided clear
opportunity to argue whether the Breach Claim could survive the
first phase and the parties' briefings support the conclusion
that there was general understanding that a second phase was
only a possibility.

Under Article V(1)(d), Respondent must show that "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place." Convention art. V(1)(d); see also Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 91 (2d Cir. 2005) (noting that, while enforcement of arbitral awards under Article V(1)(d) might "exalt[ ] form over substance . . . the fact that the parties explicitly settled on a form and the New York Convention requires that their commitment be respected"); Phoenix Bulk Carriers, Ltd. v. Am. Metals Trading, LLP, No. 10 Civ. 2963 (NRB), 2013 WL 5863608, at *7 n.10 (S.D.N.Y. Oct. 31, 2013) (observing that Article V(1)(d) addresses "the propriety of the arbitration procedure").

The parameters of the arbitration are dictated by the underlying agreements, which proscribe the ICC Rules and Swiss law. Each of the Agreements state that: "All disputes in connection with this Agreement shall be finally settled under the Arbitration Rules of the International Chamber of Commerce, Paris, by three Arbitrators appoint in accordance with the said Rules." Buell July 28 Decl., Exs. A § 10, B § 5. Moreover, the Terms of Reference established by the Arbitral Tribunal held

14

that, for applicable procedural rules: "The rules governing the
proceedings of this arbitration shall be the mandatory rules at
the place of arbitration (*i.e.*, those set forth in Chapter 12 of
the Swiss Private International Law Act ["PILA"]) and those
contained in the [ICC] Rules, as well as those rules agreed upon
by the Parties." Buell Sept. 22 Decl. Ex. A ¶ 112.

Under the ICC Rules, Article 38(4) states that: "The final
award shall fix the costs of the arbitration and decide which of
the parties shall bear them or in what proportion they shall be
borne by the parties." ICC Rules art. 38(4), available at
https://iccwbo.org/dispute-resolution-

services/arbitration/rules-of-arbitration; Buell July 28 Decl.
Ex. E ¶ 525 (albeit cited by the Arbitral Tribunal as "Article
37").[2] Under the Swiss PILA's Chapter 12, which governs
international arbitrate proceedings taking place in Switzerland,
there is no discussion of the issue of cost and legal fee
allocation by arbitral tribunals, which in turn allows arbitral

---

[2]     While Respondent correctly notes that the Agreements state
that each agreement "shall be governed by and construed in
accordance with the laws of Turkey," Buell July 28 Decl., Exs. A
§ 9, B § 4, that fact has no relevance to Article V(1)(d)
consideration, which requires only analysis of the "arbitral
procedure" pursuant to the parties' agreement, Convention art.
V(1)(d). As noted above, the procedural posture of the
arbitration demonstrate that the ICC Rules and Swiss PILA would
govern this arbitration.

15

tribunals the discretion to decide procedural issues not otherwise agreed upon by the parties. See Declaration of Nathalie Voser dated October 12, 2017 ("Voser Decl.") ¶¶ 12-13, 16, Dkt. No. 57.

The question, therefore, is whether finding joint and several liability presumed from the text of the Final Award violates the procedural rules outlined above and under which the parties agreed to arbitrate. It does not. In its Final Award opinion, the Arbitral Tribunal referred to the Claimants together as one single "Party," Buell July 28 Decl., Ex. E ¶ 530, which "jointly submitted their Statement of Claim" along with evidence and briefing throughout the proceeding, id. ¶ 87; see also id. ¶¶ 90-96-97, 101, 105, 107-08, 111-23, 128(i), 134(i), 1365-40, 143-47, 543-44. The Final Award is grafted onto the underlying procedural law, which supports joint and several liability. When making their decision, the ICC Rules permitted the Arbitral Tribunal to decide which parties should bear costs or in what proportion, so electing not to apportion the Final Award out between the Claimants and instead referring to them as a single "Party" demonstrates a decision not to apportion—in other words, to create joint and several liability. See ICC Rules art. 38(4); Voser Decl. ¶ 30. At the same time, the Swiss PILA was silent on the issue of joint and several liability, and

other underlying Swiss law to which the Arbitral Tribunal could
have looked points in opposing directions. See Voser Decl.
¶¶ 14-15, 17-31.[3] In the face of this, Respondent, whose "heavy"
burden it is to prove procedural impropriety, has put forward no
evidence to establish that such a conclusion goes beyond the
agreed-to arbitration procedures. Encyclopaedia Universalis, 403
F.3d at 90.

In sum, given the language of the Final Award, the
procedural history of the arbitration, and the supportive
underlying procedural rules, there is more than "a barely
colorable justification" to support finding that an implied
joint and several liability in the Final Award conformed to the
procedural parameters permitted under the Agreements. Gomez de
Hernandez v. Wells Fargo Advisors, LLC, No. 16 Civ. 9922 (LGS),
2017 WL 3088396, at *2 (S.D.N.Y. July 20, 2017) (quoting D.H.
Blair, 462 F.3d at 110); see id., 2017 WL 3088396, at *4

---

[3]      The parties have noted two underlying Swiss statutes
potentially relevant to international arbitrations. The first is
the Swiss Supreme Court Act ("SCA"), which governs proceedings
before the Swiss Supreme Court, which hears challenges of
international arbitral tribunal awards; the other is the Swiss
Code of Civil Procedure ("CCP"), which governs proceedings
before Swiss lower courts. See Voser Decl. ¶¶ 15-16. The SCA
provides that unless otherwise stated, multiple persons need to
bear costs imposed by a court jointly and severally. Id. ¶¶ 17-
18. The CCP provides that a court must expressly state whether
parties jointly and severally are liable for costs. Id. ¶¶ 19-
21. Neither bound the Arbitral Tribunal. Voser Decl. ¶ 13.

(rejecting Article V(1)(d) argument when petitioner seeking to vacate award did not show that "arbitration procedure deviated from the terms of the parties' agreement"). More is not needed to require the Final Award's confirmation

### c. Respondent's Standalone Ambiguity Argument Fails

Finally, separate but related to his Article V(1)(d) argument, Respondent contends that the Final Award is so ambiguous with regard to the apportionment of costs that it is impossible to enforce. Opp. Mem. 10-12. Respondent predicates his argument not on particular Article V's provisions but rather language from authorities within the Second Circuit that hold that if the award is "ambiguous . . . the court should remand to the arbitrator for further findings." Alcatel Space, S.A. v. Loral Space & Commc'ns Ltd., No. 02 Civ. 2674 (SAS), 2002 WL 1391819, at *4 (S.D.N.Y. June 25, 2002) (collecting cases); see Telenor Mobile Commc'ns AS v. Storm LLC, 351 F. App'x 467, 469 (2d Cir. 2009) ("[R]emand to an arbitration panel for clarification may be appropriate where an award is so ambiguous that a court is unable to discern how to enforce it."); Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987) (internal quotation marks omitted) ("Indefinite, incomplete, or ambiguous awards are remanded so that the court will know exactly what it

18

is being asked to enforce."). This argument fails for two
reasons.

To start, the Final Award is not ambiguous. Even to assume,
*arguendo*, that ambiguity was an appropriate ground for this
Court to consider prior to confirming an arbitral award in the
present context, "the court must examine the award to determine
whether a provision is ambiguous" and if "the award is clear and
unambiguous, it must be enforced." Alcatel Space, S.A., 2002 WL
1391819, at *4 (S.D.N.Y. June 25, 2002) (internal quotation
marks and citations omitted). As detailed above, the procedural
history of the arbitration and the language employed in the
Final Award by the Arbitral Tribunal when discussing the
Claimants and their collective relationship sufficiently
establish that the Final Award created joint and several
liability between the Claimants. See supra at 16-17. Whatever
ambiguity existed by looking solely to the award section of the
Final Award, it is resolvable by the record and the Arbitral
Tribunal's thorough Final Award opinion; it is clear what the
Arbitral Tribunal decided. See, e.g., Retail, Wholesale & Chain
Store Food Emps. Union Local 338 v. Red Apple Supermarkets, No.
94 Civ. 2110 (DGT), 1996 WL 204503, at *4 (E.D.N.Y. Apr. 18,
1996) (quoting United Steelworkers v. Danly Mach. Corp., 852
F.2d 1024, 1026 (7th Cir. 1988)) (observing that district courts

19

may "interpret and enforce an ambiguous award if the ambiguity can be resolved from the record"). As such, the inquiry could end right there.

As a secondary reason, the fact that Article V does not include ambiguity as an enumerated reason for this Court to refuse enforcement is Respondent's Achilles' heel, because it is not clear that ambiguity as argued is an appropriate ground to refuse enforcement. When a district court sits in a different country or under different applicable law from where the arbitral award was made, that court is said to be sitting in "secondary jurisdiction." LGC Holdings, Inc. v. Julius Klein Diamonds, LLC, 238 F. Supp. 3d 452, 465 (S.D.N.Y. 2017) (citing Yusuf, 126 F.3d at 23). As the arbitration neither occurred in New York nor under New York law, secondary jurisdiction is the juridical posture here. When sitting in secondary jurisdiction, as the Second Circuit has recently reminded district courts, the parameters within which a district court may refuse enforcement are rigidly circumscribed: "[T]he [New York] Convention is equally clear that when an action for enforcement is brought in a foreign state, the state may refuse to enforce the award only on the grounds explicitly set forth in Article V of the [New York] Convention." CBF Industria de Gusa S/A, 850 F.3d 58 at 71 (quoting Yusuf, 126 F.3d at 23) (emphasis added, alterations in

original).[4] Accordingly, ambiguity, not a ground "explicitly set forth" in Article V, may not be a ground for consideration. See Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier, 508 F.2d 969, 973 (2d Cir. 1974) ("Both the legislative history of Article V . . . and the statute enacted to implement the United States' accession to the Convention [9 U.S.C. § 207] are strong authority for treating as exclusive the bases set forth in the Convention for vacating an award.")

For differing reasons, none of the authority presented by Respondent that mention ambiguity of an award as a reason for not confirming an award establish that this Court has the authority to go beyond the enumerated strictures of Article V. Some cases Respondent cites are in the context of courts sitting

---

[4] This is in contrast to courts sitting under the law where the award was made, which is termed primary jurisdiction, where additional grounds for relief may be available. See, e.g., Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 111, 115 n.1 (2d Cir. 2007) (citation omitted) ("In contrast to the limited authority of secondary-jurisdiction courts to review an arbitral award, courts of primary jurisdiction, usually the courts of the country of the arbitral situs, have much broader discretion to set aside an award."); Yusuf, 126 F.3d at 23 (citing Convention art. V(1)(e)) ("The Convention specifically contemplates that the state in which, or under the law of which, the award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief.").

in primary jurisdiction, which, as already noted, permits a wider range of available adjudicative options. See Telenor Mobile Commc'ns AS v. Storm LLC, 587 F. Supp. 2d 594, 600 (S.D.N.Y. 2008) (discussing an arbitral award from an arbitration held in New York), aff'd, 351 F. App'x 467 (2d Cir. 2009); Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Ins. Co., No. 04 Civ. 5044 (NRB), 2005 WL 1216292, at *2 (S.D.N.Y. May 23, 2005) (same). The discussion of ambiguity in Alcatel Space, S.A., although sitting in secondary jurisdiction, was based on pre-Yusuf authority from courts sitting in primary jurisdiction and did not address the tension between its opinion and Second Circuit authority like Yusuf. See id., 2002 WL 1391819, at *4 (S.D.N.Y. June 25, 2002) (citing Rizzo v. Zalkin, No. 92 Civ. 6127 (SWK), 1994 WL 114836, at *6 (S.D.N.Y. Mar. 31, 1994), Zephyros Maritime Agencies, Inc. v. Mecicana De Cobre, S.A., 662 F. Supp. 892, 895 (S.D.N.Y. 1987); Hellman v. Program Printing, Inc., 400 F. Supp. 915, 918 (S.D.N.Y. 1975)). The only Second Circuit authority presented by Respondent, Ottley v. Schwartzberg, addressed confirmation of an arbitral award under the Convention and the Federal Arbitration Act ("FAA"), which permits a wider set of parameters than the Convention in deciding whether to confirm an award.[5] See Ottley, 819 F.3d at

---

[5]     Although not cleanly stated, courts remanding for ambiguity regularly ground their decision in attempting to ensure that the

375. Moreover, Ottley precedes Yusuf by a decade, and as such the more recent Yusuf's clear language on the parameters of confirmation under the Convention controls.

Accordingly, Respondent's standalone ambiguity argument for refusing to confirm the Final Award fails.

---

arbitral award constitutes a "a mutual, final, and definite award upon the subject matter submitted," Olympia & York Fla. Equity Corp. v. Gould, 776 F.2d 42, 45 (2d Cir. 1985) (citing 9 U.S.C. § 10(d), now id. § 10(a)(4)), or that there has not been "manifest disregard of the law" or the underlying facts of the case by the arbitrators, Siegel v. Titan Indus. Corp., 779 F.2d 891, 894 (2d Cir. 1985) (citations omitted); see also Sevenson Envtl. Servs., Inc. v. Sapp Battery Site Grp., No. 04 Civ. 670 (JFK), 2004 WL 936764, at *5 (S.D.N.Y. Apr. 29, 2004) ("Courts in this circuit have interpreted this portion of the statute [9 U.S.C. § 10(a)(4)] to require the remand of awards they deem to be incomplete or ambiguous."); Dworkin-Cosell Interair Courier Servs., Inc. v. Avraham, 728 F. Supp. 156, 161–62 (S.D.N.Y. 1989) (alteration in original, citations omitted, emphasis added) (sitting in primary jurisdiction and remanding an arbitral award "back to arbitrators for clarification" because petitioner sought "confirmation under both the Convention and the Federal Arbitration Act, and it is well established under the latter that '[c]ourts will not enforce an award that is incomplete, ambiguous or contradictory'"). These reasons are considered by courts when deciding whether to confirm awards on grounds created by the FAA, which is applicable for American courts sitting in primary jurisdiction, not secondary jurisdiction. See,e.g., Leeward Constr. Co., 826 F.3d at 638; Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 n.1 (2d Cir. 2003); Yusuf, 126 F.3d at 20–23.

**Conclusion**

A "barely colorable justification" exists to justify the award sought, and Respondent has not met his "heavy" burden to avoid confirmation. Albtelecom, 2017 WL 2364365, at *4 (citations omitted). Accordingly, based upon the conclusions set forth above, the petition is granted, and the Final Award is confirmed.

The parties are instructed to confer and submit judgment on notice.

It is so ordered.

**New York, NY**
**March 𝒱 , 2018**

ROBERT W. SWEET
U.S.D.J.