UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
BSH HAUSGERÄTE GMBH,

    Petitioner,

 -against-

JAK KAMHI,

    Respondent.
-----------------------------------------X

17 Civ. 5776

OPINION

A P P E A R A N C E S:

  Attorneys for Petitioner

  PILLSBURY WINTHROP SHAW PITTMAN LLP
  1540 Broadway
  New York, NY 10036-4039
  By: Kenneth W. Taber, Esq.
    Nicholas M. Buell, Esq.

  Attorneys for Respondent

  DAVIDOFF HUTCHER & CITRON LLP
  605 Third Avenue, 34th Floor
  New York, NY 10158
  By: Eric J. Przybylko, Esq.


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/25/18

**Sweet, D.J.**

Petitioner BSH Hausgeräte GMBH ("BSH" or the "Petitioner") has moved under Fed. R. Civ. P. 66 and New York C.P.L.R. § 5228(a) for the appointment of a receiver to administer, collect, and sell the real property owned by Respondent Jak Kamhi ("Kamhi" or the "Respondent") located at 15 West 53rd Street, Apt. 32B, New York, NY 10019 (the "Property"), which is currently secured by an Order of Attachment. See ECF No. 66.

Based upon the conclusions set forth below, the motion is granted. The Court-ordered receiver is Stuart N. Siegel, of Engel & Volkers New York Real Estate LLC.

I. **Prior Proceedings**

Background on the parties, their arbitration agreements, the foreign arbitration process before a panel of three arbitrators (the "Arbitral Tribunal"), the Final Award, and confirmation of the Final Award are set forth in this Court's October 18, 2017 Opinion (the "October Opinion"), and its March 02, 2018 Opinion (the "March Opinion"). See BSH Hausgerate, GMBH v. Kamhi, No. 17 Civ. 5776 (RWS), 2017 WL

1

4712226, at *1-*2 (S.D.N.Y. Oct. 18, 2017); BSH Hausgerate, GMBH v. Kamhi, 291 F. Supp. 3d 437 (S.D.N.Y. 2018). Familiarity with the above is assumed. The following facts are presented only as necessary to resolve the instant motion.

On October 2, 2003, BSH and Kamhi entered into a Share Sale and Purchase Agreement, under which BSH purchased shares in BSH Profilo Elektrikli Gerecler Sanayii A.S. (the "SPA-BSH"). See Declaration of Nicholas M. Buell dated July 28, 2017 ("Buell July 28 Decl."), Ex. A, Dkt. No. 10. The SPA-BSH contained an agreement to arbitrate disputes through the International Chamber of Commerce's International Court of Arbitration (the "ICC") and under the ICC's Rules of Arbitration (the "ICC Rules"). Id., Ex. A, ¶ 10.

On October 7, 2003, Kamhi also signed a separate Share and Sale Purchase Agreement with another party (the "SPA-DB" and, together with the SPA-BSH, the "Agreements"), and to which BSH was not a party. See id., Ex. B. Like the SPA-BSH, the SPA-DB also contained an agreement to arbitrate disputes before the ICC and under the ICC Rules. See id., Ex. B ¶ 5.

On October 7, 2013, Kamhi, one of five claimants (the "Claimants"), submitted a Request for Arbitration to the ICC.

2

See id., Exs. C, E ¶ 1 (defining the five claimants as "Claimants"). In the arbitration, Claimants sought monetary and non-monetary relief based on the theory that the termination of a distributorship agreement in 2008 (the "DA"), to which BSH was not a party, triggered an automatic rescission that terminated the SPA-BSH; accordingly, Claimants requested either that BSH return its SPA-BSH shares or pay damages for allegedly causing the breach. See id., Exs. C, E ¶¶ 143-47. On January 15, 2014, BSH filed its Answer to the Request for Arbitration, consenting to the ICC's jurisdiction. See id., Exs. D ¶¶ 11-12, E ¶ 10. The parties and Arbitral Tribunal agreed to the arbitration's Terms of Reference on May 19, 2014. See Declaration of Nicholas M. Buell dated September 22, 2017 ("Buell Sept. 22 Decl.") Ex. A, Dkt. No. 44.

During the arbitration proceedings, BSH and the other respondents in the arbitration moved to have the arbitration bifurcated as to whether (i) the DA's termination automatically terminated the SPA-BSH (the "Automatic Termination Claim") and (ii) BSH caused the breach of the DA (the "Breach Claim"); on August 11, 2015, after briefings, an initial denial, and a renewed motion for bifurcation, the Arbitral Tribunal granted the request. Declaration of Eric J. Przybylko dated September 14, 2017 ("Przybylko Decl."), Exs. 2-3, 7, Dkt. No. 39. The

3

Arbitral Tribunal noted that, after resolving the question of automatic termination, subsequent issues, "if any, will be determined by the [Arbitral] Tribunal in consultation with the Parties." Id., Ex. 7 ¶ 47.

On February 6, 2017, the Arbitral Tribunal issued its Final Award, awarding BSH a money judgment against the Claimants in the amount of: (1) $544,230; (2) €1,900,487.13; and (3) interest on those amounts under Article 4(a) of the Turkish Law No. 3095, at the applicable rate, compounded annually, from February 7, 2017 until full and final settlement of the award. See Buell July 28 Decl., Ex. E ¶¶ 67-142, 574-79 & sec. XVIII.

On August 1, 2017, an Order of Attachment was issued by this Court, securing a total amount of $3,000,000, which was levied "upon the real property at 15 W. 53rd Street, Apt. 32B, New York, New York 10019" (the "Property"). See ECF No. 3 at 2.

On March 2, 2018, this Court issued its March Opinion, confirming the Final Arbitration Award. BSH Hausgerate, GMBH v. Kamhi, 291 F. Supp. 3d 437 (S.D.N.Y. 2018). In it the Court found "[r]espondent ha[d] not met his 'heavy' burden to avoid confirmation." Id.(quoting Albtelecom SH.A. v. UNIFI Commc'ns,

4

Inc., No. 16 Civ. 9001 (PAE), 2017 WL 2364365, at *4 (S.D.N.Y. May 30, 2017)).

On April 3, 2018, Final Judgment was entered by this Court, awarding $544,230 in BSH's favor against Kamhi, €1,900,487.13 in BSH's favor against Kamhi, and interest on both amounts totaling $6,270.57 and €10,941.47, respectively. See ECF No. 66.

On April 3, 2018, BSH moved under Fed. R. Civ. P. 64, 66, and 69, as well as N.Y. C.P.L.R. § 5228(a), to appoint a receiver to administer, collect, and sell the Property, in order to satisfy the Final Judgment.

## II. Applicable Standard

Section 5228 of New York's C.P.L.R. vests with courts the discretion to appoint a receiver "to administer, collect, improve, lease, repair or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment." N.Y. C.P.L.R. 5228 (McKinney). If appointed, the Court's "order of appointment shall specify the property to be received, the duties of the receiver and the manner in which they are to be performed." Id.;

see also United States v. Vulpis, 967 F.2d 734, 736 (2d Cir. 1992). "A receiver shall be entitled to necessary expenses and to such commissions, not exceeding five percent of the sums received and disbursed by him, as the court which appointed him allows." Id.

In exercising discretion to appoint a receiver, courts consider three factors: "(1) alternative remedies available to the creditor . . .(2) the degree to which receivership will increase the likelihood of satisfaction . . . (3) the risk of fraud or insolvency if a receiver is not appointed." See e.g., Hotel 71 Mezz Lender LLC v. Falor, 14 N.Y.2d 303, 317 (2010), United States v. Zitron, No. 80 Civ. 6535 (RLC), 1990 WL 13278, at *1 (S.D.N.Y. Feb. 2, 1990); Baker v. Dorfman, No. 99 Civ. 9385 (DLC), 2000 WL 1010385, at *7 (S.D.N.Y. July 21, 2000). Where the party seeking appointment of a receiver "fail[s] to demonstrate a special reason to justify the appointment of a receiver," the motion should be denied. See generally Galen Technology Solutions, Inc. v. VectorMAX Corp., 107 A.D. 3d 435, 435-36 (1st Dep't 2013).

## III. The Motion to Appoint a Receiver is Granted

### (1) Alternative Remedies Available

As to the first factor, Petitioner contends that, because Defendant's only asset in New York is the Property, its sale is necessary to satisfy the judgment, and a receiver sale is the best way to accomplish the sale. See id. at 7 ("*First*, absent the sale of the Property, BSH will be unable to recover the amounts owed to it pursuant to the Final Judgment.").

Respondent argues in opposition that BSH has alternative remedies available. Resp. Memo. in Opp., ECF No. 72. First, Kamhi notes that it offered to BSH an ownership interest in a "brand name for marketing small consumer electronics in Turkey." Id. at 6. Second, "Kamhi offered to pay BSH a total of $3.1 million in installments between July 2018 and March 2019, which would exceed the face value of the judgment including post-judgment interest." Id. Petitioner understandably rejected the first proposal, reasoning that it "has no interest in entering any such further business dealings with Kamhi," Pet. Memo. in Reply, ECF No. 73 at 8, and the second proposal because "more than 50% of the total payments would only be made in

7

February and March of 2019." Id. These proposals, for the reasons Petitioners provide, do not amount to meaningful alternative remedies. The only alternative remedy available to Petitioner is sale of the Property by a sheriff in a public auction.

### (2) Whether Receiver would Increase the Likelihood of Satisfaction

As to whether a receiver would "increase the likelihood of satisfaction," (Hotel 71 Mezz Lender LLC v. Falor, 14 N.Y.2d 303, 317 (2010)) Petitioner contends that it would, citing commentary by a New York Civil Practice treatise which recognizes that "a receiver conducting a private sale will be able to realize a greater sum for the property than will a sheriff conducting a public sale." See Pet. Memo. in Reply, ECF No. 73, at 9 (citing 11 Weinstein, Korn & Miller, New York Civil Practice, 5228.09. Petitioner avers that a receiver "experienced in the sale of luxury properties" brings a higher sale price and would therefore "greatly increase the likelihood of satisfaction." Id. (citing United States v. Vulpis, 967 F.2d 734, 736 (2d Cir. 1992) (recognizing the appropriateness of a receiver when "a public auction is inadequate.")

Petitioner also cites an August 2017 online listing of the Property by a private broker on Streeteasy.com for $3.495 million ("The Ad"). See Memo. in Reply, ECF. No. 73 at 9 ("[Kamhi] himself listed the Property for sale with a private broker on August 2, 2017 . . . with an asking price of $3,495,000."); see Pet. Memo in Opp., at 12-13, see also Buell Decl., Ex. B, ECF No. 56-2. That the $3,495,000 asking price is "significantly higher than the current total Final Judgment" suggests a receiver sale would satisfy the Final Judgment. See Pet. Memo in Reply, ECF No. 73 at 10. Whether a receiver sale is *more likely* to satisfy the Final Judgment than a sheriff's sale, however, is not entirely clear.

The only evidence adduced regarding the Property's market value is The Ad, which suggests that sale by a receiver, rather than a sheriff, would satisfy the judgment. Buell Decl., Ex. B, ECF No. 56-2. The Second Circuit has recognized that "a traditional sale by the sheriff at auction to the highest bidder, with no supervision by a court office, would not suffice to protect the government's interest." See United States v. Vulpis, 967, F.2d 734, 736 (2d Cir. 1992).

### (3) Risk of Fraud or Insolvency if Receiver is Not Appointed

While no evidence has been adduced to suggest fraud or insolvency would result from denial of the instant motion, Petitioner's position is that such a finding is unnecessary. Pet. Memo in Reply, ECF No. 73 at 5 ("appointment of a Receiver . . . is, in fact, entirely a matter of judicial discretion")(internal quotations omitted). Petitioner cites Ernest Lawrence Group, Inc. v. Government Careers Center of Oakland, No. 99-CV-3807, 2000 WL 1655234, at *2 (S.D.N.Y. Nov. 3, 2000) for the principle that appointment of a receiver is "appropriate when, in the judgment of the court, a public auction is inadequate either because it is unlikely to product significant bids, *or* because leaving the property in the hands of the judgment debtor creates a risk of fraud or insolvency." (emphasis added).

While there is an absence of evidence regarding the Property's value and expected sale price, the Ad, posted by a reputable real-estate brokerage, suggests that a *private* sale would result in satisfaction of the judgment, with excess proceeds available for distribution to Respondent. A sale of the

property that both satisfies the Final Judgment and allows for excess proceeds to be distributed is preferable to one that does not. See Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp., 2006 WL 616267, at *4 (E.D.N.Y. Mar. 6, 2006)("When disposition of the debtor's property by private negotiation is preferable to an execution sale.")

This is especially true because the cost of a receiver would not materially exceed a sheriff's "poundage fee." See Pet. Memo. in Reply, ECF No. 73 at 9 ("*Compare* C.P.L.R. § 5228 (Receiver entitled to compensation of up to five percent . . .*with* C.P.L.R. § 8012(b)(1)(Sheriff entitled to poundage fees of five percent[.]") (internal quotations omitted).

Respondent's remaining objection to appointment of a receiver is that Petitioner's request is "procedurally defective" for failure to include a receiver's oath, failure to post an undertaking, and a commitment to keeping written records concerning the receivership. Resp. Memo. in Opp., ECF No. 72, at 12. In view of Petitioner's revised Proposed Order, which addresses each of these concerns, Respondent's objections are without merit. See ECF 74-1. Moreover, "because the assets going into receivership will be applied in satisfaction of the

11

judgment, there is no need for the Court to set a bond amount under C.P.L.R. § 6403." <u>Daum Global Holding Corp v. Ybrant Digital Ltd.</u>, No. 13-CV-3135 (AJN), 2018 WL 2122816, at *4 (S.D.N.Y. May 8, 2018).

**IV. <u>The Receiver</u>**

The Court hereby appoints Stuart N. Siegel of Engel & Volkers New York Real Estate LLC to serve as receiver to administer, collect, and sell the Property. The receiver's duties and authority are established by the concurrent order.

**Conclusion**

Based upon the conclusions set forth above, the motion for appointment of a receiver to administer, collect, and sell the Property is granted. The receiver shall be Stuart N. Siegel, whose duties and authority are established by the concurrent order.

It is so ordered.

**New York, NY**
**September 25, 2018**

_____
ROBERT W. SWEET
U.S.D.J.